UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN COOK,<br><br>        Plaintiff,<br><br>    v.<br><br>SYNACOR INC., HIMESH BHISE, KEVIN RENDINO, ELISABETH B. DONOHUE, MARWAN FAWAZ, ANDREW KAU, and MICHAEL J. MONTGOMERY,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ryan Cook ("Plaintiff"), by and through Plaintiff's attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Synacor, Inc. ("Synacor" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Synacor, the "Defendants") for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9 ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by affiliates of Centre Lane Partners, LLC ("CLP"), to acquire all of the issued and outstanding shares of Synacor (the "Proposed Transaction").

1

2. On or about February 10, 2021, Synacor entered into an agreement and plan of merger, (the "Merger Agreement"), whereby shareholders of Synacor common stock will receive $2.20 in cash for each share of Synacor common stock they own (the "Offer Price").

3. On March 3, 2021, in order to convince Synacor's shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the sales process; (ii) the fairness opinion and financial analyses performed by the financial advisors to the Company, Canaccord Genuity LLC ("Canaccord Genuity" or the "Financial Advisors"); and (iii) certain financial projections prepared by Synacor and relied upon by the Financial Advisors.

4. The Tender Offer is scheduled to expire at 12:00 midnight, New York City time, on March 30, 2021, the twentieth (20th) business day following the Offer (the "Initial Expiration Date"), subject to extension in accordance with the terms of the Merger Agreement (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiffs seek to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Synacor's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391 as Plaintiff alleges violations of Sections 14(d)(4) and 14(e) of the Exchange Act.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. at 1316.

8. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Synacor's common stock trades on the Nasdaq Global Market (the "Nasdaq"), which is headquartered in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Synacor common stock.

10. Defendant Synacor is a Delaware corporation and maintains its principal executive office at 40 La Riviere Drive, Suite 300, Buffalo, New York 14202. The Company's common stock trades on the Nasdaq under the ticker symbol "SYNC."

11. Defendant Himesh Bhise ("Bhise") is, and has been at all relevant times, the Chief Executive Officer and a director of the Company.

12. Defendant Kevin Rendino ("Rendino") is the Interim Chairman of the Board of Directors, and has been at all relevant times, a director of the Company.

13. Defendant Elisabeth B. Donohue ("Donohue") is, and has been at all relevant times, a director of the Company.

14. Defendant Marwan Fawaz ("Fawaz") is, and has been at all relevant times, a director of the Company.

15. Defendant Andrew Kau ("Kau") is, and has been at all relevant times, a director of the Company.

16. Defendant Michael J. Montgomery ("Montgomery") is, and has been at all relevant times, a director of the Company.

17. The defendants identified in paragraphs 11-16 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

**A. Background and the Unfair Offer Consideration**

18. Synacor is a Delaware corporation and digital technology company that provides email and collaboration software, cloud-based identity management platforms, managed web and mobile portals, and advertising solutions. Synacor delivers to its customers, which include communications providers, media companies, government entities, and enterprises, enterprise

software platforms and monetization solutions through public and private cloud software-as-a-service, software licensing, and professional services. Synacor's platforms enable its clients to deepen engagement with their consumers and users.

19.     Prior to the announcement of the Proposed Transaction, Synacor was poised for excellent growth.

21.     Indeed, when the Company released its fiscal 2020 third quarter financial results on November 11, 2020, it issued a press release entitled *Synacor Reports Third Quarter 2020 Financial Results* that stated, in part:

> "Our third quarter results provide real evidence of Synacor's transformation into a world-class Enterprise SaaS company that is also committed to expanded margins and positive cash flow," said Himesh Bhise, Synacor's Chief Executive Officer. "Zimbra Enterprise SaaS plus Cloud ID SaaS delivered 17% year-over-year growth, our second consecutive quarter of double digit Enterprise SaaS revenue growth that we expect will continue into 2021. We have also improved profitability: year-to-date Software Segment adjusted EBITDA margin expanded to 32% from 27% a year ago, and our Portal & Advertising Segment adjusted EBITDA margin was 7% in Q3 and break-even year-to-date, despite the impact of COVID-19."
>
> Bhise added, "We enter Q4 and 2021 with noteworthy Cloud ID customer launches, a compelling new Zimbra Cloud collaboration platform, a pronounced market recovery underway in Advertising, a robust sales pipeline, and a cost structure that will yield positive free cash-flow."

22.     Further, the Company's trading price was increasing significantly. Indeed, between January 7, 2021 and February 10, 2021 (*i.e.,* the month-long period between when the Board initially agreed to the merger with CLP and the announcement of the Proposed Transaction), the Company's trading price had increased ***more than 30%***, from $1.49 per share to $1.95 per share.

23.     Indeed, because the Company locked itself into a merger price with CLP that would have implied virtually no premium at all by the time the Proposed Transaction was announced, and Synacor and CLP needed to increase the Offer Price by 10% as a result.

24. Thus, the Proposed Transaction comes at a time when the Company's recent and future success was not fully reflected by its share price, and the Proposed Transaction will cash-out Synacor's stockholders at a price that fails to adequately compensate them for the intrinsic value of their shares.

25. Despite Synacor's intrinsic value and exceptional growth prospects, the Individual Defendants are agreeing to sell the Company and deprive its stockholders of the ability to partake in the Company's future growth. The Individual Defendants breached their fiduciary duties owed to the Company's stockholders by agreeing to the Proposed Transaction for the unfair Offer Consideration, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which has caused Plaintiffs and the Class to receive an inadequate Offer Consideration.

**B.   The Proposed Transaction**

26. On February 11, 2021, Synacor issued a press release announcing the Proposed Transaction, which stated in part:

**SYNACOR AGREES TO BE ACQUIRED BY CENTRE LANE PARTNERS**

*Transaction Values Company at Approximately $92 Million;*

*Centre Lane to Commence Tender Offer to acquire Synacor at $2.20 Per Share in Cash*

February 11, 2021 07:00 AM Eastern Standard Time

BUFFALO, N.Y.—(BUSINESS WIRE)—Synacor, Inc. (Nasdaq: SYNC), a leading provider of cloud-based Collaboration and Identity Management software and services serving global enterprises, video, internet and communications providers, and governments, today announced that it has entered into a definitive agreement and plan of merger with an affiliate of Centre Lane Partners, LLC, a New York-based private investment firm, to be acquired in an all-cash transaction that values Synacor at approximately $92 million.

Under the terms of the agreement, Centre Lane will commence a tender offer to acquire all of the outstanding common shares of Synacor for $2.20 in cash per share. This represents a 29% premium to the 60-day volume weighted average stock

price as of February 10, 2021. Synacor's Board of Directors has unanimously approved the agreement.

Himesh Bhise, Chief Executive Officer of Synacor, commented, "Partnering with Centre Lane, a firm with $2 billion of capital under management and an established track record of helping software companies scale, provides our stockholders with compelling value while benefiting our customers and employees. Our Board of Directors has thoroughly and carefully considered our alternatives and believes the Centre Lane proposal is the best path forward for the company. The Synacor team looks forward to working with Centre Lane to scale the business and deepen our value proposition to customers."

"We are thrilled to support the continued growth and evolution of Synacor," said Kenneth Lau, Managing Director of Centre Lane. "Himesh and his team have transformed Synacor into a world-class Enterprise SaaS company, while absorbing the costs and navigating the requirements of being publicly traded. We look forward to combining our expertise and capital resources with Synacor's talented team to further enhance its Identity, Collaboration and Advertising products, expand its customer pipeline and scale the business."

Under the terms of the agreement, Centre Lane will commence a tender offer to acquire all issued and outstanding shares of Synacor common stock for $2.20 per share in cash. The transaction is subject to customary closing conditions and regulatory approvals, including the tender of a majority of the issued and outstanding shares of Synacor common stock. Centre Lane has committed capital to complete the transaction and receipt of financing by Centre Lane is not a condition to closing. Centre Lane has also entered into tender and support agreements with certain stockholders represented on the Synacor Board, under which they have committed to tender all of their Synacor shares in the tender offer, which represent approximately 18% of Synacor's issued and outstanding shares.

Following completion of the tender offer, Centre Lane will acquire all remaining shares of Synacor at the same price of $2.20 per share in cash through a second-step merger. The closing of the transaction is expected to take place during or prior to the second quarter of 2021. Following completion of the transaction, Synacor's common stock will be delisted from the Nasdaq Stock Market and deregistered under the Securities Exchange Act of 1934, as amended.

Canaccord Genuity is serving as financial advisor and Gunderson Dettmer is serving as legal advisor to Synacor. Thompson Hine LLP is serving as legal counsel to Centre Lane.

Additional details about the agreement will be contained in a Current Report on 8-K to be filed by Synacor with the U.S. Securities and Exchange Commission (the "SEC").

27.     Rather than continuing to build upon Synacor's improving prospects, the Offer Consideration being offered to Synacor's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Synacor common stock is materially in excess of the amount offered given the Company's recent financial performance and its prospects for future growth and earnings.

**C.     The Preclusive Deal Protection Devices**

28.     To the detriment of Synacor shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

29.     The Merger Agreement contains a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

30.     The no-shop provision also prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to unsolicited proposals regarding alternative acquisitions or business combinations.

31.     Further, the Board must provide CLP with written notice of any Acquisition Proposal and must provide prior written notice of its intention to terminate the Merger Agreement in favor of any Superior Proposal so that CLP has the opportunity to adjust the terms and conditions of the Merger Agreement so that the Acquisition Proposal ceases to be a Superior Proposal.

32.     In addition, the Merger Agreement provides that the Company will be required to pay a termination fee of $3,500,000.00 to CLP with respect to any termination under the no-shop provisions.

33. Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

34. The aggregate effect of these preclusive deal protection devices, viewed in light of the remarkably accelerated negotiation process with CLP and the materially inadequate consideration offered for Synacor shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

35. Accordingly, Plaintiffs seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

D.   **The Recommendation Statement Omits Certain Material Information**

   (i)   **The Recommendation Statement Contains Materially False Statements and Omissions Regarding the Process by Which the Board Agreed to Sell the Company**

36. The Recommendation Statement states that the Board entered confidentiality agreements with standstill obligations with several counterparties but fails to disclose whether those standstill obligations are subject to "Don't Ask Don't Waive" ("DADW") provisions. Whether these standstill obligations include DADW clauses must be disclosed because the existence of DADW may preclude competing counterparties from submitting a Superior Acquisition Proposal notwithstanding the "fiduciary out" clause that purports to allow the Board "to exercise its fiduciary duties and accept a superior proposal provided that the Company pays a $3.5 million termination fee."

37. The Recommendation Statement also states that in discussing Company E's proposal to commence a Tender Offer to purchase 35% of the Company's outstanding equity at

$2.00 per share on December 17, 2020, the Company Special Committee determined that the proposal "would give Company E significant ability to influence the outcome of future stockholder votes of the Company, and would likely grant it effective operating control of the Company, without acquiring 100% of the Company's outstanding equity and equity awards or paying a premium to all of the Company's stockholders." However, the Recommendation Statement fails to disclose whether Company E's proposal contemplated making the proposed $2.00 offer price available to the Company's public shareholders before the Company's insiders, including the members of the Company Special Committee and their "equity awards." This information is especially material because the Company allowed Company E's proposal to expire on January 4, 2021 only to execute a nonbinding letter of intent with CLP *at the same $2.00 per share price* on January 7, 2021, just three days later. Indeed, CLP was not even asked to improve its offer price until February 8, 2021 at which point the Company was already trading at $2.00 per share such that CLP's then-existing proposal to acquire all of the outstanding equity in the Company for $2.00 per share did not imply any premium to the trading price at all. Any reasonable investor would be left wondering whether the Company Special Committee could have negotiated a better offer price for the Company's public shareholders if they had not been committed to ensuring that they would be able to cash out their own equity in the Company.

      **(ii)**     **The Recommendation Statement Contains False Statements and Omissions Related to the Management Projections and the Fairness Opinion**

      38.     The Recommendation Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's Financial Advisors performed to render the opinion because it does not provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion. Specifically, the Recommendation

Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations, and the Financial Advisors' potential conflicts of interest. Without this information, stockholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Offer Price is fair, or accurately assess the reliability of the Fairness Opinion. The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them. Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

39. With respect to the Management Projections, the Recommendation Statement fails to disclose material information. With respect to these financial projections, directors are obligated to provide complete valuation metrics to shareholders, particularly in cash-out transactions where non-GAAP metrics were used by the banker, since such metrics are not uniformly defined and shareholders are therefore unable to assess the utility and legitimacy of the actual metrics without seeing the underlying components.

40. With respect to the Company Forecasts beginning on Page 45, the Recommendation Statement states that "[t]he underlying assumptions used in the Company Forecasts are generally based on information and market factors known to Company management when prepared during the second half of 2020 and then subsequently updated in January 2021" but the Recommendation Statement omits entirely the initial projections that were prepared "during the second half of 2020." Any reasonable investor would be left wondering what the original projections were, and whether the forecasts were "updated in January 2021" with the intention of justifying the Offer Price.

41. Also with respect to the Company Forecasts that were prepared by Management, provided to the Board, and relied upon by the Financial Advisors, the Recommendation Statement

does not disclose the following line-items used to determine the projected unlevered free cash flows: (i) Interest, (ii) Depreciation and amortization, (iii) Capital expenditures, (iv) Changes in net-working capital, (v) Taxes (or tax rate), and (vi) Any other line items used to derive Unlevered Free Cash Flow.  All of this information is especially material to the Company's public investors because the Recommendation Statement specifically states that Company E's proposal required the Company agree to adopt a "poison pill" stockholder rights plan to protect the value of its historical net operating losses, presumably because the Company's NOL carryforwards would materially affect the Company's cash flows going forward, which the Company's Annual Report on Form 10-K filed in March 2020 states amounted to $48.2 million as of December 31, 2019.

42.     The Recommendation Statement also omits material information regarding the Financial Advisors' Fairness Opinion and the various valuation analyses performed to render that opinion.  The description of the Fairness Opinion fails to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.

43.     With respect to Canaccord Genuity's *Selected Public Companies Analysis* beginning on Page 30, the Recommendation Statement fails to disclose: (i) the objective criteria that Canaccord Genuity used in determining that the selected companies "share similar business characteristics to the Company," if any, (ii) the implied Enterprise Value for each of the selected companies (including that that two selected companies with the lowest multiples by far, Criteo S.A. and CSG Systems International, Inc., had market caps in the range of ***$1-2 billion*** as compared with Synacor's market cap of less than $100 million, which is much closer to the other companies included in the analysis), and (iii) the full rationale and basis that Canaccord Genuity employed in selecting its selected ranges of EBITDA multiples, including which companies were deemed most similar to Synacor, if any.

44. With respect to Canaccord Genuity's *Selected Precedent Transaction Analysis* beginning on Page 32, the Recommendation Statement fails to disclose: (i) the objective criteria that Canaccord Genuity used in selecting the precedent transactions, if any, (ii) the implied Enterprise Value in each transaction, (iii) whether each transaction involved consideration in the form of cash, stock, or a cash/stock mix, and (iv) the full rationale and basis that Canaccord Genuity employed in selecting its selected range of LTM EBITDA multiples of 6.1x to 15.0x, including whether Canaccord Genuity considered the Revenue multiples in one or more of the selected transactions and whether there was any effort to account for the effects of the Covid-19 pandemic. All of this information is especially material because so many of the transactions that were deemed "precedent" and purportedly included in the analysis had EBITDA multiples that were either "not available" or "not meaningful."

45. With respect to Canaccord Genuity's *Discounted Cash Flow Analysis* ("*DCF*") beginning on Page 34, the Recommendation Statement fails to disclose: (i) the full rationale and basis for selecting a discount rate range of 13.0% to 15.0% for each analysis, (ii) the terminal values and Canaccord Genuity's full rationale and basis for selecting a perpetuity growth rate range of 1.0% to 3.0%, (iii) whether and how Canaccord Genuity accounted for the significant value of the Company's NOLs, and (iv) a full sensitivity table based on the entire range of discount and perpetuity growth rates. Without this information, it is impossible to determine whether the discounted cash flow analysis actually provides a reasonable range for the Company's intrinsic value. Indeed, a banker can make any transaction seem "fair" simply by changing the inputs and assumptions to project and discount future cash flows below the present value of the merger consideration.

## COUNT I
### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

59.     Plaintiffs incorporate each and every allegation set forth as if fully set forth herein.

60.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

61.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62.     The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

63.     In doing so, Defendants made untrue statements and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and

14

disclose such information to shareholders although they could have done so without extraordinary effort.

64. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

65. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

66. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiffs, and Plaintiffs will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT II
**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

67. Plaintiffs incorporate each and every allegation set forth as if fully set forth herein.

68. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

69. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated

thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

70. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

71. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

72. The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9 if other SEC regulations specifically require disclosure of the omitted information.

73. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, that render the Recommendation Statement misleadingly incomplete. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while

Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

74.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiffs, and Plaintiffs will be deprived of the right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiffs rescissory damages

C.     Directing the Defendants to account to Plaintiffs for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

<div style="display: flex;">
<div>

Dated: March 16, 2021

**OF COUNSEL:**

**ADEMI LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
jfruchter@ademilaw.com

*Attorneys for Plaintiff*

</div>
<div>

**MONTEVERDE & ASSOCIATES PC**

 */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

</div>
</div>